*Liability of railroads for fire from their engines—Contributory negligence.*

A statute made the proprietors of every railroad liable " for all damages
which shall accrue to any person or property by fire or steam from any
locomotive or other engine on such road," and gave them an insurable
interest in property exposed along the line.   In an action against a rail-
road under this statute—*Held,* that the liability thereby imposed is that
of insurers, and that the doctrine of contributory negligence by the
plaintiff does not apply.

FROM ROCKINGHAM CIRCUIT COURT.

This was an action founded upon the provisions of the statute, mak-
ing railroad corporations liable for damages occasioned by fire com-
municated by their locomotives.   Tried before FOSTER, C. J., C. C.,
and a jury.

The plaintiff's saw-mill, machinery, and lumber were consumed by
fire, August 8, 1873.   The mill was situated about eighty feet easterly
from the tracks of the railroad.   Several trains had passed over the
line shortly before the fire was discovered, which was about a quarter
past nine o'clock in the morning.   The evidence tended to show that
the wind was blowing fresh from a north-westerly direction, though
this question was controverted.   On the side of the mill next the
tracks there was a large door leading to and from the basement of the
mill.   In the basement a large quantity of shavings, saw-dust, and
other débris had accumulated.

The plaintiff testified : " This large door was open that morning.   It
had been opened a day or two before for the purpose of cleaning out
the shavings, &c., and this work had not been completed.   We usually
kept the door closed.   When the great doors were open, and the wind
was that way, there was a strong draught of air under and through the
mill.   I was well aware of this.   The pile of shavings under the planer
extended very near to this door.   Some windows were broken on the
back side of the mill."   This was the side nearest the railroad.   This
door was eighty-five feet distant from the nearest railroad track, and
one hundred and ten and a half feet from the main track.

Upon the subject of contributory negligence, the court charged the
jury as follows : " If the defendants' engine communicated the spark,
the defendants are liable at all events, unless the spark was communi-
cated through the plaintiff's own negligence, unless his own negligence,
or that of his servants, contributed to the result.   Negligence is the ab-
sence of care, in all the circumstances of a given case.   I have said that
the plaintiff, Mr. Rowell, had the right to locate and use his mill where
he did locate it and use it, but he was bound to use ordinary and reason-
able care and diligence in the protection and preservation of his own

property ; and he is not entitled to recover if his own negligence contributed to its destruction. And one who is exposed to the risk of injury from another's fire is bound to take customary and reasonable precautions (in view of the circumstances of exposure) to protect himself, but he is under no obligations to do anything more than this. Considering all the circumstances, he is not required to use unusual precautions. He is bound to take such care and make such use of his mill, under the circumstances of its location, as people ordinarily take with regard to property so situated. He is not guilty of contributory negligence, by reason of making any legitimate and proper use of his mill.

" You have heard the evidence with regard to the condition of the doors and windows of the mill. You will consider whether it is reasonable that a person should keep his doors constantly shut about such premises ; and, when you consider that matter, you will consider whether or not he conducted, with reference to the doors and the windows of his mill, in such a manner as people of ordinary care and prudence would conduct with reference to such property and the uses to which it is subjected. If the fire on this occasion lodged outside of the plaintiff's mill, and worked its way underneath and inside of it, the railroad is liable, unless the plaintiff, by the careless use of his mill and its surroundings, contributed the means of communication. If the wind blew lighted sparks under, into, or against the mill, though it may not have been the fault of the railroad, still, it is not the plaintiff's fault, if he was guilty of no want of ordinary care."

The jury found a verdict for the defendants, which the plaintiff moved to set aside for alleged error in the foregoing instructions, and " because there was no evidence of the want of ordinary care on the part of the plaintiff or his servants in the occupation and use of the mill."

The stenographer's notes of the evidence are made a part of the case. The questions of law thus raised were transferred to this court for determination.

*Marston* (with whom was *Locke*), for the plaintiff.

1. The court charged the jury that " Negligence is the absence of care, in all the circumstances of a given case ; " that " the plaintiff was bound to use ordinary and reasonable care and diligence in the protection and preservation of his own property " ; that is, the greater the danger of destruction by fire from the acts of the defendants, the greater must be the care and diligence of the plaintiff to prevent such destruction. In other words, the court charged in effect that the plaintiff's care and diligence to preserve his property must be in proportion to the danger caused by the acts of the defendants, and he must use such ordinary care and diligence as would ordinarily prevent any injury at all. This we submit is erroneous, and that the doctrine of contributory negligence is wholly inapplicable to a case like this.

The burden of the increased risk from fire occasioned by the use of locomotives is not placed by law upon the owners of exposed property, but upon the corporation authorized by law to use such dangerous apparatus, and to insure such exposed property. Gen. Stats., ch. 148, secs. 8, 9; *Hooksett* v. *Concord R. R.*, 38 N. H. 242; *Hart* v. *W. R. R.*, 13 Met. 99; *Kellogg* v. *C. & N. W. R. R.*, 26 Wis. 223 (7 Am. R. 69); *Cook* v. *Champlain T. Co.*, 1 Denio 91; *Vaughan* v. *Taff Vale R. R.*, 3 Hurl. & Norm. 743 and 679.

2. There was no competent and sufficient evidence from which the jury could find negligence on the part of the plaintiff that would prevent his recovery. The facts sworn to by the plaintiff, and stated in the case, are all that were relied upon to prove negligence. *State* v. *Railroad*, 52 N. H. 528. In *Piggot* v. *Eastern Company Railroad*, 54 E. C. L. R. 228, fire was communicated to a thatched roof forty-five feet distant, and the defendants were held liable;—see, also, *Aldridge* v. *Gr. Western R. R.*, 3 M. & G., 515, which was an action for firing a stack of beans. In neither case was contributory negligence suggested.

*Hatch*, for the defendants.

I. The charge of the court was sufficiently favorable to the plaintiff.

1. The liability of the defendants depends upon Gen. Stats., ch. 148, sec. 8. This statute is similar to that which makes towns liable for damages by reason of the insufficiency of highways—Gen. Stats., ch. 69, sec. 1—and must receive the same reasonable construction. See *Farnum* v. *Concord*, 2 N. H. 392; *Norris* v. *Litchfield*, 35 N. H. 276, etc.

2. Such a construction is necessary, otherwise the defendants are chargeable with the consequences of the plaintiff's own acts. At law, and in equity, parties are liable for damages caused by their negligence, just as much as if caused by trespass, or other acts positively wrong. It would be absurd to contend that the defendants could be holden liable for a fire caused by a locomotive, which the plaintiff had actively and intentionally aided in kindling. If the fire was kindled by his own negligence, his responsibility is the same, for the reason is the same. In either case, the plaintiff has done a wrong to the defendants, and he shall not take advantage thereof. A different construction would lead to very absurd results. For example, shall a man establish a powder-mill near a railroad, or store or dry his gunpowder, or other more violent explosive, within the reach of the sparks of the locomotives? We apprehend that in such a case he would even be liable to the railroad for damages caused by the explosion he had invited. The erection of stacks of hay, or the negligent use or storage of shavings and the like, so near a railroad as to make combustion probable, are acts differing in degree, but not in principle, from the case of the manufacture or storage of gunpowder or other explosives. Such acts amount to a positive wrong to the railroad; as much so as if the property of

the road be burned by the negligence of the plaintiff. It may be said that this doctrine abridges the right of the owner of land to occupy it as he pleases. But we apprehend that at common law a person has no right to use his own land in such way as, either by his positive act or his neglect, carelessly to endanger either himself or others. Moreover, it is to be presumed that, if the right of the plaintiff to use his own land is in any way affected or limited by the existence of the railroad, compensation was made to him therefor when the railroad was laid out. *Dearborn* v. *Boston, Concord & Montreal R. R.*, 24 N. H. 179. The fact, that the defendants may by the statute be holden liable without any evidence of negligence on their part, makes the construction we contend for more highly equitable. If, in ordinary cases, a party cannot recover for injuries received from the negligence of another, when his own negligence has contributed to the injury, *a fortiori* he ought not to recover where the innocent act of another, aided by his own negligence, has caused the damage. If it be suggested that the statute authorizes the defendants to protect themselves by insurance, the answer still is, that the plaintiff has no right, by his own fault and negligence, to put the defendants to the expense of insurance. He has no right to inflict a loss upon the insurance company, nor upon the defendants, if they chose to assume the risk and stand themselves in the place of insurers. Under a statute similar to ours, in Maine, it has been holden that the liability of railroads under the statute is limited to such property as they can reasonably insure. *Chapman* v. *A. & St. L. Railroad*, 37 Me. 92 ; *Pratt* v. *A. & St. L. Railroad*, 42 Me. 579. Steam saw-mills, if insurable at all, are so only at the highest rates ; and the culpable negligence of the plaintiff, such negligence as the case shows he was guilty of, cannot be insured against. And insurance is but a partial protection, as no insurance company will cover the whole value of any property.

3. The point seems well settled by authority. In *Ross* v. *Boston & Worcester R. R.*, 6 Allen 89, the charge of the court was much more favorable to the defendants than in the present case. And under a similar statute, 6 Allen 87. Sherman & Redfield on Negligence, sec. 335, p. 399; *Great Western Railway Co.* v. *Haworth*, 39 Ill. 346 ; *Smith* v. *Hannibal & St. Joseph R. R.*, 37 Mo. 287 ; *Kellogg* v. *Chicago &c. R. R.*, 26 Wis. 223.

II. The objection, that there was no evidence of want of ordinary care on the part of the plaintiff, is fully answered by the case itself. See *Ross* v. *Boston & Worcester R. R.*, 6 Allen 89 ; *Smith* v. *London & S. W. R. R. L.*, 5 Com. P. 98 ; *Kellogg* v. *Chicago, &c., R. R. Co.*, 26 Wis. 233.

\* LADD, J. " The proprietors of every railroad shall be liable for all damages which shall accrue to any person or property by fire or steam from any locomotive or other engine on such road. Such proprietors shall have an insurable interest in all property situate on the line of

---

\* SMITH, J., did not sit.

such road exposed to such damage, and may effect insurance thereon for their own benefit." Gen. Stats., ch. 148, secs. 8, 9. This appears to be a reëstablishment, as to railroads, of the ancient doctrine of the common law, requiring them to keep the fire from their engines on their own premises at their peril. Com. Dig., Action upon the Case for Negligence (6 A).

But the learned judge who tried the case was of opinion that the usual rule, as to contributory negligence on the part of the plaintiff, should nevertheless be applied, and charged the jury, in broad terms, that the plaintiff was bound to take customary and reasonable precautions (in view of the circumstances of exposure) to protect himself; that he was bound to take such care and make such use of his mill, under the circumstances of its location, as people ordinarily take with regard to property so situated.

Now it is not difficult to suppose a case where the application of this rule would impose such restrictions upon the use which the owner of real property, situated near the line of a railway, may make of that property, as will entirely ruin a legitimate business established and carried on by him there, either before or after the construction of the railroad (and it probably makes no difference whether before or after), and so, to all practical intents, destroy the value of his land. Certainly, it must often impose upon the owner of land thus situated, obligations and restrictions in the use of it of an exceedingly onerous and annoying kind. On the other hand, it is easy to suppose cases where the exercise of reasonable care to guard against the danger thus brought to one's door by a railroad would be a very slight burden to the owner, when the omission of such care would leave the property exposed in such way that to guard it against the danger would be an exceedingly great burden to the railroad.

Suppose a land-owner has been accustomed to store hay or cotton, or some even more inflammable and dangerous goods, in an open shed standing upon the margin of land taken for a railroad, and very near the track: common prudence, nay, any, the least prudence, would require that when the road is opened for use, and locomotive steam engines begin to pass daily and hourly along the line, the owner of such property should take suitable precautions to secure it against the danger thus brought upon it, and the expense and trouble of so doing might be comparatively slight. Suppose another land-owner has a mill, or other manufacturing establishment, so situated that the business carried on in it cannot be continued without exposing the property to imminent peril of destruction by fire from the engines: it may be that the exercise of no more than reasonable and ordinary care (in view of the circumstances of exposure) will require an outlay so great as to absorb the entire profits of his business, and so render his property practically valueless. Now the question is, whether a line can be drawn in such cases, and if so, where it is to be located and how described.

The liability of the railroad is made absolute by the statute. No

question of care or negligence on their part is left open. If they throw sparks or fire upon the land of an adjoining owner, or allow their fire—that is, fire from their engines—to escape upon the land of such owner, they are made responsible in the same way as the owner of cattle, whose nature it is to rove, is liable for the damage they do in case they escape upon the land of another : and in the same way one is liable for damage caused by filth or noxious odors originating or accumulated upon his land, and passing therefrom to that of another. There is no rule of law that requires the plaintiff to so use his land that it shall not be exposed to injury from the act of another, especially when that act is impliedly forbidden by the law. And even without the statute, the throwing of a spark or coal of fire upon a pile of shavings, which I have negligently suffered to accumulate near a house I am building, is as much a trespass as would be the throwing of a spark or coal upon shavings which I have packed away, using ordinary care to ensure their safety. I do not see what restriction the court can place upon the use one may make of his own, inside the maxim *sic utere*, &c., without a sheer invasion of his right of property. It seems to me the observations of BEARDSLEY, J., in *Cook* v. *The Champlain Transportation Company*, 1 Den. 91, are sound, and that they apply directly in the present case. He says (p. 101),—"We may run through every imaginable variety of position, some of more and some of less exposure and hazard, and we must at last, I think, come to the conclusion, that, while a person confines himself to a lawful employment on his own premises, his position, however injudicious and imprudent it may be, is not therefore wrongful ; and that his want of due care or judgment in its selection can never amount to negligence, so as thereby to deprive him of redress for wrongs done to him by others."

So in *Fero* v. *The Buffalo & State Line R. R. Co.*, 22 N. Y., 215, BACON, J., says,—"It is difficult to maintain the proposition that one can be guilty of negligence while in the lawful use of his own property upon his own premises. The principle contended for by the defendants' counsel, if carried to its logical conclusion, would forbid the erection of any buildings whatever upon premises in such proximity to a railroad track as would expose them to the possibility of danger from that quarter. The rights of persons to the use and enjoyment of their property are held by no such tenure as this."

In *Vaughan* v. *Taff Vale Railway Co.*, 3 H. & N. 750, MARTIN, B., says *(arguendo )*,—"It would require a strong authority to convince me that, because a railway runs along my land, I am bound to keep it in a particular state." And BRAMWELL, B., in delivering the opinion of the court in the same case (p. 752) says,—"It remains to consider another point made by the defendants. It was said that the plaintiff's land was covered with very combustible vegetation, and that he contributed to his own loss. We are of opinion this objection fails. The plaintiff used his land in a natural and proper way for the purposes for which it was fit. The defendants come to it, he being passive, and do it a mischief." In *Blyth* v. *Birmingham Water-works Co.*, 11 Exch.

783, MARTIN, B., said,—" I held, in a case tried at Liverpool, in 1853, that, if locomotives are sent through the country emitting sparks, the persons doing so incur all the responsibilities of insurers; that they were liable for all the consequences. I invited counsel to tender a bill of exceptions to that ruling."

In *Kellogg* v. *The Chicago & N. W. Railway Co.*, 26 Wis. 223, DIXON, C. J., says,—" Now the case of a railroad company is like the case of an individual. Both stand on the same footing with respect to their rights and liabilities. Both are engaged in the pursuit of a lawful business, and are alike liable for damage or injury caused by their negligence in the prosecution of it. Fire is an agent of an exceedingly dangerous and unruly kind, and, though applied to a lawful purpose, the law requires the utmost care in the use of all reasonable and proper means to prevent damage to the property of third persons. This obligation of care, the want of which constitutes negligence according to the circumstances, is imposed upon the party who uses the fire, and not upon those persons whose property is exposed to danger by reason of the negligence of such party. Third persons are merely passive, and have the right to remain so, using and enjoying their own property as they will, so far as responsibility for the negligence of the party setting the unruly and destructive agent in motion is concerned. If he is negligent and damage ensues, it is his fault, and cannot be theirs unless they contribute to it by some unlawful or improper act. But the use of their property as best suits their own convenience and purposes, or as other people use theirs, is not unlawful or improper. It is perfectly lawful and proper, and no blame can attach to them. He cannot by his negligence deprive them of such use, or say to them ' do this or that with your property or I will destroy it by the negligent and improper use of my fire.' "

Bearing in mind that the absolute liability cast upon the defendants by our statute has the effect to relieve the plaintiff from showing negligence on their part, all these observations are entirely applicable to the case before us.

*Ross* v. *Boston & Worcester R. R.*, 6 Allen 87, is not an authority the other way, except that the court did not go out of their way to disapprove the ruling of the judge at *nisi prius*,—because, the verdict being for the plaintiff, the question was not before the court at all. But it seems to me a fair construction of the statute must give it an effect beyond that already assumed,—that is to say, the effect of relieving the plaintiff from proving negligence on the part of the defendants. I think the manifest intention of the legislature was to cast upon the proprietors of railroads the substantial liability of insurers against fire with respect to the property specified; and that being so, the same rule, as to contributory negligence by the plaintiff, that obtains between the parties to a fire policy in case of loss should be applied. In *Shaw* v. *Robbards*, 6 A. & E. 83, Lord DENMAN, C. J., says,—" One argument more remains to be noticed, viz., that the loss here arose from the plaintiff's own negligent act in allowing the kiln to be used for a purpose

to which it was not adapted. There is no doubt that one of the objects of insurance against fire is to guard against the negligence of servants and others; and therefore the simple fact of negligence has never been held to constitute a defence. But it is argued that there is a distinction between the negligence of servants or strangers and that of the assured himself. We do not see any ground for such a distinction, and are of opinion that, in the absence of all fraud, the proximate cause of the loss only is to be looked to." And it is said that this doctrine is now well settled law in this country;—see cases collected in 2 Par. on Con. (5th ed.) 449, n. v.

Of course any fraud, any intentional exposure of property, in short, any act by the property-owner which would have the effect to avoid a fire policy, should have the same effect in cases of this description ; that is, to discharge the railroad from the liability of insurers imposed upon them by the statute. For these reasons I am of opinion the verdict should be set aside.

CUSHING, C. J. In the case of *Kellogg* v. *The Chicago & Northwestern R. R. Co.*, Mr. Chief-Justice DIXON has illustrated with much vigor the difficulties in the way of applying the common law doctrine of contributory negligence to actions against railway companies by adjacent land-owners for damages occasioned by the negligent management of their engines. If this were an action at common law, I should be very much disposed to follow the doctrine of that case.

This, however, is an action under our statute—ch. 149, sec. 8—by which it is provided that " the proprietors of every railroad shall be liable for all damages which shall accrue to any person or property by fire or steam from any locomotive or other engine on such road." By section 9 it is provided that " such proprietor shall have an insurable interest in all property situated on the line of such road, exposed to such damage, and may effect insurance thereon for their own benefit." By section 10 a certain interest is given to such proprietors in any insurance effected by the owners.

It seems to me that the effect of this legislation is to make the proprietors of a railroad liable as insurers. This construction of the statute makes the liability exactly commensurate with the indemnity which the proprietors are entitled to provide for, and to claim under the statute.

Contributory negligence does not furnish any defence to any action by the insured on the policy of the insurance. By the statute, the proprietors are liable for all damages which shall accrue, &c., and have an insurable interest in all property exposed to such damage. Negligence, either of the railroad or of the land-owner, would not, according to the authorities, be a defence to an action by the proprietors to recover on their policy the amount of the loss insured. It would be odd enough if the proprietors could recover on their policy, and then turn round and defeat the property-owner on the ground of contributory negligence. *Chandler* v. *Worcester Ins. Co.*, 3 Cush. 328 ; *Johnson* v. *Berkshire Ins. Co.*, 4 Allen 338 ; Par. on Con., B. 3, sec. 3, C.

Parsons, in commenting on *Chandler* v. *Ins. Co.*, after saying that the supreme court holding that there might be a degree of negligence which would discharge an insurer, adds,—" But the court in their decision so described the negligence, which would alone have this effect, that there was no new trial, the insurers paying the loss, with some abatement." I think that we ought to hold a reasonable construction of this statute to be, that the defendants in this case ought to be held liable as insurers, and that the jury ought to have been instructed that no negligence of the plaintiff would discharge the defendants, unless so great as to be equivalent to fraud.

STANLEY, J., C. C., concurred.

*Verdict set aside.*